**E-FILED**
Tuesday, 13 May, 2014 11:19:27 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JOSEPH TEEN DUNLAP, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 10-cv-3293 |
| | ) | |
| DONALD GAETZ, | ) | |
| | ) | |
| Respondent. | ) | |

# OPINION

RICHARD MILLS, U.S. District Judge:

Pending is the Petition of Joseph Teen Dunlap for a Writ of Habeas Corpus under 28 U.S.C. § 2254. For the following reasons, the Petition is denied.

## I.

In January 2006, Mary Hughes was a drug addict, and her drug of choice was crack cocaine. Her life was spinning out of control. She was on probation for drug offenses and there was a pending petition to revoke her probation.

On January 12, 2006, Hughes was arrested by the Illinois State Police. Between that date and February 6, 2006, she worked as a confidential source for the State Police. She apparently participated in controlled purchases during that time period, and was paid between $200 and $300 for her work. This payment was made in January 2006. After February 6, 2006, the Illinois State Police was unable to maintain contact with Hughes, and stopped using her as a confidential source due to difficulty maintaining contact with her.

During February 2006, Hughes began working for the Bloomington Police Department as a confidential source. The Bloomington Police Department (BPD) contacted the State Police to find out more about her previous work as a confidential source, and learned that the State Police was not interested in using her any more because they could not maintain contact with her. No reference to her work for the State Police was included in the investigative reports maintained by BPD.

On March 22, 2006, the BPD arranged for Hughes to make a series of controlled purchases of heroin from Petitioner Dunlap. BPD officers

photocopied the currency that would be used as buy money, recording the serial numbers. Hughes engaged in three controlled purchases during that day.

Later in the day, officers executed a search warrant at the apartment where the controlled purchases had taken place. Petitioner Dunlap ran out of the apartment building's back exit. Officers discovered a baggy containing heroin in a back staircase leading to the back exit. When Dunlap was searched, officers found $400 in his pocket. Serial numbers on the bills matched those of the pre-recorded buy money.

On March 29, 2006, a grand jury charged Dunlap with two counts of unlawful possession of a controlled substance with intent to deliver, two counts of unlawful possession of a controlled substance, and three counts of unlawful delivery of a controlled substance. In June 2006, Dunlap was tried in the Circuit Court of McLean County, Illinois.

It appears that the BPD never informed the prosecutors that Hughes had worked as a confidential source for the State Police prior to working for

their department. At the trial, the lead officer testified that his department had not paid Hughes for her work as a confidential source.

Hughes also testified at trial regarding her activities as a confidential source. During cross-examination, she was asked the following question: "during your work as a confidential source from February to whenever, have the police given you any money in return for your services?" Hughes responded in the negative.

She was also asked the following question: "What else do you do for money?" She testified that she had worked at J & J Concessions. She was then asked "What else have you done over the last year?" Hughes testified that she had worked "doing hair," and had worked as an exotic dancer.

During the trial, the jury learned that Hughes had been arrested on January 12, 2006, February 2, 2006, and May 27, 2006, and that she was facing up to three years on a probation violation, and up to six years related to the May 2006 arrest. In addition, it was revealed that Hughes had regularly used marijuana and crack cocaine in violation of her confidential

source agreement, and that she had smoked crack cocaine with Dunlap during a controlled purchase on March 22, 2006.

On June 14, 2006, the jury found Dunlap guilty on all counts. Following the trial, the defense learned that Hughes had previously worked as a confidential source for the State Police. On August 18, 2006, the defense filed a post-conviction motion requesting a judgment of acquittal, or alternatively, a new trial. In the motion, the defense argued that they had not been informed of her confidential work for the State Police, and that Hughes' trial testimony was inconsistent with these newly-discovered facts. The defense asserted that by failing to disclose this other confidential work, the prosecution had committed violations of the standards for disclosing evidence set out in Brady v. Maryland, 373 U.S. 83 (1963).

A hearing was held on September 25, 2006. At the hearing, a State Police officer testified regarding Hughes' work as a confidential source. Although the officer initially characterized Hughes as "unreliable," upon further questioning by the court, he explained that Hughes' confidential source work was good, but that she would not answer her phone, or return

messages, and they had difficulty contacting her. There was no evidence that BPD officers were aware that Hughes had been paid by the State Police.

The court ruled that Hughes had not lied. It noted that the question regarding receiving money as a confidential source specifically asked about being paid for work from February 2006 onward, when she was exclusively working for the BPD. The court also concluded that the question about what she had done for money over the last year probably was interpreted to reference actual employment, and that her response would not have been improper.

The court also found that the evidence established that the prosecutors were not informed of Hughes' work for the State Police until after the trial had concluded.

Finally, the court concluded that had this additional information been available it would not have impacted the outcome of the trial, because it merely showed that Hughes had worked as a confidential source for the

State Police for a month, and that nothing about her work for the State Police would have caused any serious impeachment. The court noted in its oral ruling that Ms. Smith was already significantly impeached and that the evidence against Dunlap was significant:

> Miss Hughes in this case was significantly impeached with the fact that she was in most respects a fairly miserable human being with a drug habit who had violated her confidential source agreement, who had used illegal drugs and been arrested and had even been high and used cocaine during busts, and for the life of me I can't really see how questioning her about these other few buys with the State Police Task Force would have done anything that would have made her testimony any more incredible.
>
> The problem with this case from the Defendant's viewpoint is not that he was not able to significantly impact the credibility of this witness, which I believe Mr. Lewis did an excellent job bringing out every point about that. The problem is, as the State has pointed out in its argument, is the corroboration of Miss Hughes' testimony that is available in the evidence in this case, and without that corroboration, I don't think we would be sitting here today because I think with the evidence that was presented, the jury wouldn't have believed her without substantial corroboration and the fact is that this is basically a buy/bust situation, and the Defendant is caught running from scene and he has the drugs in his pocket and the drugs are thrown down on the path he left, and everything

> involved about the situation is just substantial corroboration for what Miss Hughes said and was able to overcome the obvious weaknesses in her testimony and that being able to ask her about a couple of other buys for which she got a couple hundred dollars back in January, how that would have impacted the verdict in this case, I just can't see that it would have, and so the motion is going to be denied.

Although the defendant was convicted of seven counts, the trial court only sentenced him on five counts, imposing one sixteen-year sentence, and four six-year sentences, all to run concurrently.

Dunlap filed a direct appeal, but did not raise any issue related to Hughes' testimony or her work for the State Police. Instead, he alleged that the trial court had erred in failing to give him monetary credit for the 191 days he spent in pretrial custody. The Appellate Court of Illinois, Fourth District, affirmed the judgment, but directed the trial court to amend the sentencing order to reflect a monetary credit. No further action was taken on direct appeal.

On October 14, 2008, Dunlap filed a state post-conviction petition in the trial court. He alleged that the prosecution had violated Brady

because they had not disclosed Hughes' work as a confidential source for the State Police. He further alleged that the prosecution had violated the principles set out in Napue v. Illinois, 360 U.S. 264 (1959), because they had failed to correct Hughes' testimony that was allegedly false. Finally, Dunlap alleged that his appellate attorney had been ineffective for failing to raise these issues on direct appeal.

On January 7, 2009, the post-conviction petition was dismissed by the Circuit Court of McLean County in a four-page order. The court ruled that the Brady and Napue issues raised were barred by the doctrines of res judicata and waiver, because the defendant had failed to raise them in his direct appeal. Regarding the effectiveness of appellate counsel, the court concluded that failure to raise these issues did not fall below an objective standard of reasonable representation because there was no reasonable probability that raising the issues on appeal would have changed the outcome.

The defendant appealed the decision, raising more or less the same issues. On May 28, 2010, the Appellate Court of Illinois, Fourth

District, issued a sixteen-page order affirming the trial court decision. That court ruled as follows: "Here, defendant filed a direct appeal but failed to raise any issue with respect to the State's disclosure of information relating to Hughes. As a result, that claim has been forfeited." The court then rejected Dunlap's claims on the merits, essentially adopting the reasoning and conclusions of the trial court.

Dunlap filed a petition for leave to appeal with the Supreme Court of Illinois, which was denied on September 29, 2010.

It does not appear that Dunlap ever challenged his conviction or sentence in the Supreme Court of the United States.

Dunlap initiated this action on November 10, 2010, raising the Brady and Napue claims. The case was initially assigned to then-Chief Judge Michael P. McCuskey. Judge McCuskey then assigned the case to U.S. District Judge Sue E. Myerscough. Judge Myerscough had participated in the underlying state appellate litigation as a justice of the Appellate Court

of Illinois, and recused herself. The case was then transferred to the undersigned.

II.

Dunlap's claims are procedurally defaulted, because the Appellate Court of Illinois rejected his claims on procedural grounds. The U.S. Court of Appeals for the Seventh Circuit has explained as follows:

> Before a federal court can consider a petition for habeas corpus, a petitioner must satisfy several procedural requirements. If the claim comes from the Illinois state courts, the petitioner must have presented each claim in the habeas petition to the Illinois Appellate Court and to the Illinois Supreme Court in a petition for discretionary review. As part of this requirement, a petitioner must have fairly presented both the operative facts and legal principles that control each claim to the state judiciary. A petitioner's failure to fairly present each habeas claim to the state's appellate and supreme court in a timely manner leads to a default of the claim, thus barring the federal court from reviewing the claim's merits. Also, a federal court may not review a claim which was presented to the state courts but which was rejected on an independent and adequate state ground. A state law ground that provides the basis for a state court decision is independent when the court actually relied on the procedural bar as an independent basis for its disposition of the case. A state law ground is adequate when it is a firmly

established and regularly followed state practice at the time it is applied.

Smith v. McKee, 598 F.3d 374, 382 (7th Cir. 2010) (citations and quotation marks omitted); see also Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Dunlap's failure to raise his Brady and *Napue* claims on direct appeal meant that these claims were rejected on the basis of waiver or forfeiture when he raised them in his post-conviction proceedings. This state procedural bar has been held to be an independent and adequate state ground for the purposes of procedural default. See Kaczmark v. Rednour, 627 F.3d 586, 592 (7th Cir. 2010).

Default can only be excused if a petitioner "can establish cause and prejudice, or establish that the failure to consider the defaulted claim will result in a fundamental miscarriage of justice." Promotor v. Pollard, 628 F.3d 878, 887 (7th Cir. 2010) (citing Dretke v. Haley, 541 U.S. 386, 388 (2004).

The Court of Appeals has explained as follows:

> Cause for a default is ordinarily established by showing that some type of "external impediment" prevented the petitioner from presenting his claim. Prejudice is established by showing that the violation of the petitioner's federal rights worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.

Promotor, 628 F.3d at 887 (citations and quotation marks omitted).

Petitioner has not shown cause and prejudice for this default. The Court finds that the procedural default will not result in a fundamental miscarriage of justice.

The claims are denied.

III.

In the alternative, the Court would reject these claims on the merits. The Court agrees with the reasoning and conclusions of the Circuit Court of McLean County and the Appellate Court of Illinois, Fourth District, in examining the merits of Dunlap's claims.

The prosecution was unaware of Hughes' activities with the State Police at the time of trial. It does not appear that Hughes made any

false statement during her testimony. Rather, she answered specific questions asked her during cross-examination. In any event, had the information concerning Hughes' work with the State Police been known, it would not have impacted the outcome of the case.

Hughes had already been impeached significantly, but her testimony about the controlled transactions was corroborated by the other evidence in the case. Dunlap ran from the apartment building during the raid, a baggie of heroin was found along the path of his retreat, and the serial numbers and amount of money found in his pocket matched the funds used by Hughes during the last controlled purchase. The evidence against Dunlap was overwhelming.

IV.

“The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.” Rule 11(a), Rules Governing Section 2254 Proceedings. “A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the

denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "An applicant has made a substantial showing where reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Arredondo v. Huibregste, 542 F.3d 1155, 1165 (7th Cir. 2000) (quotation marks omitted).

Reasonable jurists would not dispute that Dunlap is not entitled to relief. Accordingly, the Court will not issue a certificate of appealability. If Dunlap wishes to appeal this Court's ruling, he must seek a certificate of appealability from the Court of Appeals under Federal Rule of Appellate Procedure 22.

V.

Ergo, the Petition of Joseph Teen Dunlap for a Writ of Habeas Corpus [d/e 1] is DENIED. The Motion to Amend [d/e 29] is DENIED AS MOOT.

The Clerk is directed to notify the Petitioner.

The Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

ENTER: May 12, 2014

FOR THE COURT:

*/s/* Richard Mills

Richard Mills
United States District Judge